**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1615
_____

UNITED STATES OF AMERICA

v.

ANMOL SINGH KAMRA,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-18-cr-00253-001)
U.S. District Judge: Honorable R. Barclay Surrick
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 3, 2022
_____

Before: CHAGARES, Chief Judge, SHWARTZ and SCIRICA, Circuit Judges

(Filed: October 4, 2022)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Anmol Singh Kamra was found guilty of conspiring to distribute oxycodone. **A2.** He argues that the District Court erred in refusing to (1) charge the jury using his proposed good faith instruction, and (2) admit certain patient prescription records into evidence. Because these arguments are meritless, we will affirm.

I

A

Kamra worked as a marketing executive at a pharmacy in Philadelphia. He sold unlabeled bottles of oxycodone to Frank Brown, who then sold the oxycodone pills on the street and split the cash proceeds with Kamra and George Fisher, a doctor who had previously treated Brown. Fisher provided prescription slips to cover the pills Kamra gave Brown. More specifically, Kamra and Brown provided Fisher with the names of "patients" he never treated and dates to write on the prescription slips, and Fisher prepared the slips so the pharmacy's files would have prescriptions to account for the pills. In total, the trio distributed thousands of oxycodone pills. During this time, Kamra's bank accounts showed cash deposits exceeding $270,000.

B

A grand jury indicted Kamra for conspiring with Fisher and Brown to "knowingly and intentionally distribute and dispense, outside the usual course of professional practice and for no legitimate medical purpose, a mixture and substance containing a detectable

2

amount of oxycodone" in violation of 21 U.S.C. § 846. A45-47.

Kamra proceeded to trial, where he, Fisher, Brown, pharmacist John Ivey, and several other witnesses testified. During Ivey's testimony, defense counsel attempted to introduce patient prescription records compiled by the Pennsylvania Department of Health, Prescription Drug Monitoring Program (the "PMP Records") pursuant to Federal Rules of Evidence 803(6) and 902(11). These records track prescriptions for certain drugs ordered by various doctors and filled by various pharmacies. The Government objected, arguing that Ivey could not serve as a custodian of records compiled from other pharmacies. The District Court sustained the Government's objection because (1) defense counsel belatedly presented the PMP Records to the Government, (2) Ivey was "not the custodian of the[] [PMP] [R]ecords," and (3) defense counsel failed to "provide[] a proper or valid reason to admit" the PMP Records. A323.

Before the end of trial, both the Government and Kamra submitted proposed jury instructions. The District Court considered the parties' proposals and provided the parties the instructions it intended to use. Kamra objected to the Court's proposed good faith instruction, and the Court heard argument. Thereafter, the Court "made some adjustments" and instructed the parties to make any objections "after [the Court] charge[d] the jury." A346. The Court then provided the following knowledge, intent, and good faith instruction to the jury:

> Now, the offense of conspiracy charged in the indictment requires proof that
> the Defendant knew that the purpose of the conspiracy was to distribute

[o]xycodone outside the usual course of professional practice and for no legitimate medical purpose, and proof that the Defendant joined the conspiracy with a specific intent to achieve the goal of distributing [o]xycodone outside the usual course of professional practice and for no legitimate medical purpose.

Now, ladies and gentlemen, if you find that the Defendant acted in good faith, that would be a complete defense to this charge, because good faith on the part of the Defendant would be inconsistent with acting knowingly and with the intent to further the goal of the conspiracy.

You should understand that a person acts in good faith when he has a belief, opinion, or understanding that the doctor and the pharmacy were dispensing [o]xycodone in the usual course of professional practice and for a legitimate medical purpose, even though the belief, opinion, or understanding turns out to be inaccurate or incorrect.

Therefore, in this case, if the Defendant believed that the [o]xycodone was being dispensed in the usual course of professional practice and for a legitimate medical purpose, then he did not knowingly join the conspiracy charged and he did not intend to further the goal of the conspiracy.

Now, ladies and gentlemen, the Defendant does not have the burden of proving good faith. Good faith is a defense because it is inconsistent with the mental state elements of conspiracy.

As I've told you, it is the Government's burden to prove beyond a reasonable doubt each of the elements of the offense, including the mental state elements, in deciding whether the Government has proved that the – including the mental state elements.

In deciding whether the Government proved that the Defendant acted with the required mental state or instead whether the Defendant acted in good faith, you should consider all of the evidence presented in the case that may bear on the Defendant's state of mind. If you find from the evidence that the Defendant acted in good faith, as I've defined it, or if you find for any other reason that the Government has not proved beyond a reasonable doubt that the Defendant had the requisite mental state, you must find the Defendant not guilty.

A378-80. The Court's final instruction tracked Kamra's proposal, except it omitted the following two paragraphs that Kamra requested (the "Requested Paragraphs"):

> When a doctor or pharmacist dispenses drugs in good faith in medically treating a patient, then the doctor or pharmacist has dispensed the drug for a legitimate medical purpose in the usual course of medical practice; that is, he has dispensed the drug lawfully. Good faith in this context means good intentions and the honest exercise of best professional judgment as to a patient's needs.

> If you find that Mr. Kamra believed that the doctor or pharmacists involved in this case were dispensing or causing the dispensing of drugs in good faith, you must find Mr. Kamra not guilty. This is true, moreover, even if you find that the doctor or pharmacist was not, in fact, dispensing pills for proper medical purpose, so long as Mr. Kamra believed that they were acting in good faith and Mr. Kamra's belief was reasonable under the circumstances.

A61. Kamra did not object to the Court's final good faith jury instruction.

The jury found Kamra guilty of conspiracy to distribute oxycodone outside the usual course of professional practice and for no legitimate medical purpose.

Kamra appeals.

## II[1]

Kamra argues that the District Court erred in refusing to (1) include the Requested Paragraphs in its final jury charge, and (2) admit the PMP Records into evidence.

---

[1] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

5

Neither argument has merit.

A[2]

The District Court did not err by refusing to include the Requested Paragraphs in its good faith instruction. A district court "err[s] in refusing to give a[] [requested] [jury] instruction only if the [requested] instruction was correct, not substantially covered by other instructions, and was so important that the omission of the instruction prejudiced the defendant." United States v. Smith, 789 F.2d 196, 204 (3d Cir. 1986). Here, the District Court did not err for two reasons.

First, the Requested Paragraphs were substantially covered by the final jury charge. The Requested Paragraphs explained that Kamra could not be found guilty if he "believed that the doctor or pharmacists involved in th[e] case" had "good intentions and [were] honest[ly] exercis[ing] [their] best professional judgment as to a patient's needs." A61. The District Court's final jury instruction similarly explained that Kamra must be acquitted if the jury found that Kamra "believed that the [o]xycodone was being dispensed in the usual course of professional practice and for a legitimate medical purpose." A379. The Court's use of the phrase "legitimate medical purpose" conveys

---

[2] Both parties agree that Kamra did not object to the District Court's final jury instructions and that plain error review applies. See Gov't of V.I. v. Knight, 989 F.2d 619, 631 (3d Cir. 1993) ("Since [the defendant] failed to properly preserve an objection to the [final] jury instruction, we review . . . under the plain error standard[.]"). Under plain error review, three conditions "must be met before a court may consider exercising its discretion to correct the error," including that there was an error. Rosales-Mireles v. United States, 138 S. Ct. 1897, 1904 (2018); see also Fed. R. Crim. P. 52(b).

6

the same meaning as Kamra's proposed language of a "[doctor's] honest exercise of [] professional judgment as to a patient's needs," cf. United States v. Flores, 454 F.3d 149, 161 (3d Cir. 2006) ("So long as the court conveys the required meaning, the particular words used are irrelevant."), and the Court is not required to use Kamra's preferred language, see id. ("The district court is not obligated to use the language the defendant proffers." (quotation marks omitted)). Thus, the Court did not err because the final jury instruction substantially covered the Requested Paragraphs.

Second, omission of the Requested Paragraphs did not prejudice Kamra because (1) as Kamra admits, the District Court's good faith instruction "was not wrong," Kamra Br. at 23;[3] (2) the District Court properly instructed the jury on the elements of a conspiracy, so "the good faith instruction is simply a redundant version of the instruction on those elements," United States v. Gross, 961 F.2d 1097, 1103 (3d Cir. 1992); and (3) overwhelming evidence contradicts any claim that Kamra honestly believed that Fisher was exercising his best professional judgment as to patients' needs, as, among other

---

[3] Ruan v. United States, 142 S. Ct. 2370, 2374-75 (2022), on which Kamra relies, is inapt because Ruan concerned 21 U.S.C. § 841(a)'s mens rea requirement for "doctor" defendants. In Ruan, two "doctors who actively practiced medicine" and "possessed licenses permitting them to prescribe controlled substances," challenged their convictions under § 841(a). 142 S. Ct. at 2374-75. The Court held that "[a]fter a defendant produces evidence that he or she was authorized to dispense controlled substances, the Government must prove beyond a reasonable doubt that the defendant knew that he or she was acting in an unauthorized manner, or intended to do so." Id. at 2375. Kamra is not a doctor or a pharmacist and could not prove that he was authorized to dispense controlled substances, so Ruan does not apply.

things, Kamra was recorded telling Fisher the names of the "patients" to write on the prescription slips used to cover the oxycodone pills that Kamra gave to Brown in unmarked bottles. As the District Court said, Kamra's "conduct simply d[id] not align with an individual who innocently believed the prescriptions were legitimate or the patients listed on them were actually receiving the pills they were purportedly prescribed." United States v. Kamra, No. 18-CR-00253, 2021 WL 872766, at *7 (E.D. Pa. Mar. 9, 2021). Thus, even if the Requested Paragraphs were not substantially covered, Kamra was not prejudiced by their omission.[4]

For these reasons, the District Court did not err by omitting the Requested Paragraphs.

B[5]

The District Court did not abuse its discretion in refusing to admit the PMP

---

[4] To the extent Kamra argues that District Court's good faith instruction was "crucially incomplete" because it failed to "highlight[] the point that [Kamra] was a lay person with no medical education or formal training," see Kamra Br. at 23, the Court was under no obligation to make such a factual finding or advance Kamra's theory of the case, see United States v. Hoffecker, 530 F.3d 137, 177 (3d Cir. 2008) (holding district court was correct not to offer "commentary on the evidence" and the defendant's "theory of defense" to the jury); United States v. Paradies, 98 F.3d 1266, 1287 (11th Cir. 1996) (opining that the district court correctly rejected "the requested jury charge . . . [because] it aspired to place the [] defendants' desired factual findings into the mouth of the court." (quotation marks omitted)); United States v. Barham, 595 F.2d 231, 244-45 (5th Cir. 1979) (holding district court was "quite correct" not to offer the jury a "recounting of the facts as seen through the rose-colored glasses of the defense").

[5] We review a district court's rulings concerning "the admissibility of evidence" and "the authentication of evidence" for abuse of discretion. United States v. Serafini, 233 F.3d 758, 768 n.14 (3d Cir. 2000) (admissibility); United States v. Browne, 834 F.3d

8

Records. Brown claimed that after he stopped receiving prescriptions from Fisher, he bought pills on the street and not from pharmacies. Kamra sought to impeach Brown with PMP Records that showed the prescriptions Brown received.

1

There are limits to when a witness may be impeached by extrinsic evidence. A party cannot offer "extrinsic evidence to impeach [a witness]'s testimony on a collateral matter." United States v. Hendrickson, 417 F.2d 225, 228 (3d Cir. 1969); see also United States v. Payne, 102 F.3d 289, 294 (7th Cir. 1996) ("[O]ne may not impeach by contradiction regarding collateral or irrelevant matters." (quotation marks omitted)); cf. United States v. Pantone, 609 F.2d 675, 683-84 (3d Cir. 1979) (recognizing doctrine of impeachment by contradiction). "A matter is collateral when it cannot reasonably be considered crucial or material to the issues on trial." United States v. Budzanoski, 462 F.2d 443, 455 (3d Cir. 1972).

Where or from whom Brown obtained oxycodone pills after the conspiracy ended is collateral to Kamra's guilt and not material to whether Kamra improperly supplied oxycodone pills to Brown during the conspiracy.[6] Therefore, the PMP Records could not

---

403, 408 (3d Cir. 2016) (authentication). "To the extent that these rulings were based on an interpretation of the Federal Rules of Evidence, however, our review is plenary." Serafini, 233 F.3d at 768 n.14; see also Browne, 834 F.3d at 408.

[6] Because Brown's later activities, and the PMP Records evidencing them, were not material to Kamra's defense, exclusion of the PMP Records did not violate Kamra's Sixth Amendment rights. See Gov't of V.I. v. Mills, 956 F.2d 443, 446 (3d Cir. 1992) ("[T]o establish . . . [a] violation of [the] Sixth Amendment . . . [a defendant] must show

9

be offered to contradict this collateral issue in Brown's testimony.[7]

## 2

Additionally, the District Court correctly concluded that Kamra failed to show that the PMP Records were admissible business records under Federal Rules of Evidence 803(6) and 902(11).

## a

Rule 803(6), commonly known as the "business records exception" to the rule against hearsay, "permits admission of documents containing hearsay" when a "custodian or other qualified witness" provides "foundation testimony" that:

> (1) the declarant in the records had personal knowledge to make accurate statements; (2) the declarant recorded the statements contemporaneously with the actions that were the subject of the reports; (3) the declarant made the record in the regular course of the business activity; and (4) such records were regularly kept by the business.

United States v. Pelullo, 964 F.2d 193, 200 (3d Cir. 1992) (quoting Fed. R. Evid. 803(6)). The "custodian" or other "qualified person" need not be an employee of the entity, but must have "familiarity with the record-keeping system and the ability to attest to the [four] foundational requirements." United States v. Console, 13 F.3d 641, 657 (3d Cir.

---

. . . [inter alia,] that the excluded [evidence] would have been material and favorable to his defense[.]").

[7] Moreover, Brown did not deny his drug use, and defense counsel extensively attacked Brown's credibility at trial. Thus, any error in excluding the PMP records was harmless. See United States v. DeMuro, 677 F.3d 550, 566-67 (3d Cir. 2012) (holding evidentiary "error was harmless" when the evidence against the defendant "was substantial" and the excluded evidence "was of minimal probative value").

1993) (citation and quotation marks omitted).

Here, Ivey did not, and seemingly could not, attest to all of the foundational requirements. Ivey, a pharmacist at the pharmacy where Kamra worked, simply testified that he "ha[d] access" to the PMP Records to "review [] patient profiles" from several pharmacies, A314-15, and that the PMP Records were "generated" from "data [that] is uploaded into the cloud," A316. He failed to attest that the declarant in the records (i.e., the person declaring that a patient received a prescription from a particular pharmacy on a particular date) had "personal knowledge to make accurate statements," or that the data was "recorded . . . contemporaneously" with each prescription. See Pelullo, 964 F.2d at 200. Because he did not attest to the foundational requirements of the business records exception, the District Court did not abuse its discretion in concluding that Ivey was not a proper "custodian" or other "qualified person" for purposes of Rule 803(6).

b

Moreover, Kamra failed to satisfy the self-authentication requirements of Rule 902(11). Rule 902(11) allows "a domestic record" to be "self-authenticating," meaning "no extrinsic evidence of authenticity" is required for authentication, if the record (1) "meets the requirements of [the business records exception], as shown by a certification of the custodian or another qualified person," and (2) the proponent of the record, "[b]efore the trial or hearing . . . give[s] [the] adverse party reasonable written notice of the intent to offer the record—and [] make[s] the record and certification available for

11

inspection—so that the party has a fair opportunity to challenge [the record]." Fed. R. Evid. 902(11).

Here, Kamra failed to provide the Government the PMP Records for inspection "[b]efore the trial," depriving the Government of a "fair opportunity to challenge" them. See id. Kamra provided the PMP Records the day before and day of Ivey's trial testimony. Thus, the District Court did not abuse its discretion in concluding that Kamra did not satisfy Rule 902(11)'s requirements for self-authentication.[8]

### III

For the foregoing reasons, we will affirm.

---

[8] Kamra concedes that he did not ask the District Court to admit the PMP Records under Rule 803(8). Reply Br. at 4, 19. The District Court did not err by failing to sua sponte apply a hearsay exception that neither party invoked. Moreover, as noted herein, any error would have been harmless given the evidence that proved Kamra's guilt, the thorough cross-examination of Brown, which featured attacks on his credibility based on his drug use, prior convictions, prior inconsistent statements, and motive for testifying, and the fact that Kamra had a full opportunity to present his defense, including by testifying. See United States v. Quinn, 728 F.3d 243, 264 (3d Cir. 2013) (en banc) (concluding purported evidentiary error was harmless when the excluded evidence "would [not] have altered the jury's finding of guilt" and the defendant "had the opportunity to present a full defense against the Government charges, including (as he did) by taking the stand in his own defense"); DeMuro, 677 F.3d at 566-67.

12