FILED
United States Court of Appeals
Tenth Circuit

November 4, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

LINDA K. SCHNEIDER, a/k/a Linda K.
Atterbury; STEPHEN J. SCHNEIDER,

     Defendants - Appellants.

Nos. 15-3247 & 15-3248
(D.C. Nos. 6:14-CV-01175-MLB &
6:14-CV-01176-MLB)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **O'BRIEN**, Circuit Judges.
_____

     Defendants Linda K. and Stephen J. Schneider, a nurse and doctor who ran a

pain management clinic in Kansas, were convicted in 2010 of numerous counts of

unlawfully dispensing a controlled substance resulting in serious bodily injury or

death, health care fraud resulting in serious bodily injury or death, health care fraud,

money laundering, and conspiracy. This court affirmed their convictions and

resultant sentences on direct appeal. *See United States v. Schneider*, 704 F.3d 1287

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(10th Cir. 2013). Defendants subsequently filed identical motions for relief under

28 U.S.C. § 2255, which the district court granted in part and denied in part. They

now appeal from adverse aspects of the district court's judgment. We affirm for

reasons explained below.

## I. BACKGROUND

The district court recounted the operation of defendants' pain management

clinic as follows:

> Defendant Stephen Schneider ("Stephen") was a doctor of osteopathic medicine and his wife, defendant Linda Schneider ("Linda"), was a licensed practical nurse ("LPN"). In October 2002, they opened Schneider Medical Clinic ("SMC") in Haysville, Kansas, where they provided pain management treatment including the prescription of controlled substances. The prescriptions were usually written in combinations of dangerous and addictive drugs from Schedules II, III and IV.

> SMC was a large facility and accommodated a large number of patients. It was open seven days a week, for long hours. Stephen was the only full-time doctor on staff. At times, SMC had a part-time doctor on staff but SMC usually utilized physician's assistants (PA) to see patients. Stephen provided the PAs with full, pre-signed prescription pads. The PAs did not have specialized training in pain management and they were given little discretion to alter Stephen's prescriptions.

> . . . .

> The evidence [at trial], viewed in the light most favorable to the government, overwhelmingly demonstrated that the Schneiders operated SMC as a revenue-generating facility, with little or no concern for the welfare of its "patients." Simply stated, SMC was operated as a "pill mill." The patient records showed that inadequate or no medical histories were taken, there was a lack of treatment plans, no visible effort to treat the cause of the patients' pain, failure to monitor patients' progress, a lack of documentation, escalating dosages of prescriptions and prescription practices which were likely to cause dependence. The patient records also contained numerous "red flags" which would support a finding that patients were addicted to the prescriptions, i.e., early refills, failed urine tests,

2

claims of lost prescriptions, and reports of abuse. There was evidence that some patients were selling SMC-prescribed drugs in SMC's parking lot.

. . . .

From February 2002 to February 2008, sixty-eight SMC patients died of drug overdoses. . . . During the same time period, over 100 SMC patients were admitted to local hospitals for overdoses. Defendants received repeated calls from law enforcement, concerned family members about patients' drug addictions, concerned pharmacists, and calls from Emergency Room physicians about SMC's prescription practices. SMC's method of operation continued without change.

R. Vol. 1 at 902-06 (footnotes omitted). Based on the deaths of a number of SMC patients, defendants were found guilty on four counts of unlawfully dispensing prescription drugs resulting in death or serious bodily injury and three counts of health care fraud resulting in death or serious bodily injury. The other offenses of which they were convicted are not at issue here.

After the conclusion of defendants' direct appeal, the Supreme Court issued *Burrage v. United States*, 134 S. Ct. 881 (2014), addressing illegal distribution of a schedule I or II drug "resulting in death" in violation of 21 U.S.C. § 841(b)(1)(C). The Court held that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under . . . § 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Id.* at 892; *see also id.* at 887 (noting § 841(b)(1)(C) "has two principal elements: (i) knowing and intentional distribution of [the drug] . . . and (ii) death *caused by* ('resulting from') the use of that drug" (emphasis added)). Defendants, who had requested and been denied a "but for" causation instruction at

3

trial, brought the instant § 2255 proceeding challenging, *inter alia*, their "resulting in death or serious bodily injury" convictions based on *Burrage*.

The district court held the challenged convictions were undermined by *Burrage* and vacated all but one. As to defendants' conviction for illegal distribution of fentanyl to "Robin G," who died, the district court held the failure to instruct on but-for causation was harmless error. Noting that (1) the death certificate cited the toxic effects of fentanyl as the cause of death; (2) government experts testified that the cause of death was a fentanyl overdose; and (3) defendants' expert, who discounted fentanyl as the operative cause, admitted he lacked sufficient information to opine about the cause of death, the district court concluded: "it is clear beyond a reasonable doubt that the jury would have found defendants' illegal dispensing of fentanyl was the 'but-for' cause of Robin G's death," R. Vol. 1 at 928.

The government moved for reconsideration with respect to the vacatur of defendants' other "resulting in death or serious bodily injury" convictions. It argued that the district court should have substituted convictions on the lesser included offenses (LIOs) of unlawful drug dispensing and health care fraud—for which the jury had found all of the necessary elements[1]—and resentenced defendants. The district court agreed and proceeded accordingly.

---

[1] The instructions and verdict forms required the jury to find defendants guilty of unlawful drug dispensing and health care fraud before considering the additional "resulting in" element for the associated enhanced crimes. *See* R. Vol. 1 at 908-09; Supp. R. at 117-21, 124-28, 166-73, 177, 182. Defendants concede the former are LIOs of the latter. Aplt. Opening Br. at 20.

4

Defendants moved for a certificate of appealability (COA) on two issues: (1) whether the district court erred in denying relief as to count 4 by holding the *Burrage* error harmless, given the conflicting testimony of the government and defense experts on the cause of death; and (2) whether the LIOs substituted for the vacated "resulting in death" convictions violated the Double Jeopardy Clause of the Fifth Amendment.  *See* R. Vol. 1 at 986-89.  The district court granted the motion, *see id.* at 992-93, and defendants timely appealed.

## II.  ANALYSIS OF ISSUES ON APPEAL

### A. Decision to Uphold "Resulting in Death or Serious Bodily Injury" Conviction (Count 4) on the Basis of Harmless Error

#### 1.  Applicable standard for harmless error

Defendants contend the applicable standard for determining harmless error when, as here, the jury was not instructed on an element of the offense is whether the "reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder v. United States*, 527 U.S. 1, 17 (1999).  In reviewing such instructional error for harmlessness on direct appeal from a conviction, we have sometimes invoked this standard verbatim.  *See, e.g.*, *United States v. Sierra-Ledesma*, 645 F.3d 1213, 1224 (10th Cir. 2011); *United States v. Serawop*, 410 F.3d 656, 669 (10th Cir. 2005).  We have on other occasions invoked another passage from *Neder* that does not refer to whether the omitted element was uncontested or supported by overwhelming evidence, but simply asks more generally

5

"whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained," 527 U.S. at 15 (internal quotation marks omitted). *See, e.g.*, *United States v. Alexander*, 817 F.3d 1205, 1214 (10th Cir. 2016); *United States v. Luke-Sanchez*, 483 F.3d 703, 705 (10th Cir. 2007). Defendants rely explicitly on the former version of the standard, arguing the *Burrage* error in this case cannot be found harmless for two distinct reasons, i.e., because causation was contested and because the government's case on causation was not overwhelming.

We need not parse out the proper formulation of the harmless-error standard for direct review under *Neder*,[2] because we deal here with the issue of harmless-error *on collateral review*. This circuit has made it clear that in § 2255 proceedings, as in habeas proceedings, harmless-error review is not governed by standards applicable on direct appeal but by the standard set out in *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993): "whether the error had substantial and injurious effect or influence in determining the jury's verdict."[3] *See United States v. Dago*, 441 F.3d 1238, 1245-46 (10th Cir. 2006); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 81 n.7 (2004) ("When the Government has the burden of showing that constitutional trial error is harmless because it comes up on collateral review, the heightened interest in

---

[2] The case law reflects some controversy on that point. For an extensive discussion, see the concurrences in *United States v. Pizarro*, 772 F.3d 284 (1st Cir. 2014).

[3] Defendants argue alternatively that if we do apply the *Brecht* standard, we should modify it to incorporate in some fashion aspects of the *Neder* standard. There is no basis in our case law to apply different versions of the *Brecht* standard depending on the error assessed for harmlessness.

finality generally calls for the Government to meet the more lenient [*Brecht*] standard."). We therefore use the *Brecht* standard in assessing the harmless-error issue here.[4] While this is a more lenient standard, the burden of persuasion remains on the government and, thus, "when a court is 'in virtual equipoise as to the harmlessness of the error' . . . , the court should 'treat the error . . . as if it affected the verdict.'" *Fry v. Pliler*, 551 U.S. 112, 121 n.3 (2007) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)).

## 2. Government's waiver argument

The government argues we may affirm the district court's harmless-error determination without even considering the trial record. The indictment alleged, and the jury separately found, that the fentanyl dispensed to Robin G. resulted in her death *and* resulted in her serious bodily injury—either of which is an independently sufficient basis for conviction. In arguing against harmless error in the district court and in their opening brief on appeal, defendants focused solely on the strength of the evidence relating to cause of death. The government contends they thereby waived the issue of harmless error with respect to causation of serious bodily injury and we

---

[4] The district court invoked the *Neder* standard in finding the *Burrage* error harmless with respect to Robin G. That inappropriate use of the *Neder* standard does not bind this court. We may affirm the district court's ruling on the alternative basis that the less stringent *Brecht* standard is satisfied. *See United States v. Watson*, 766 F.3d 1219, 1235 (10th Cir.) (noting this court's discretion to affirm on any ground adequately supported by the record), *cert. denied*, 135 S. Ct. 735 (2014). While the legal standard we apply is different, the parties fully briefed (both here and in the district court) the issue of harmless error, which turns on an established evidentiary record. *See id.* at 1236 n.12 (discussing considerations underlying the exercise of our discretion to affirm on alternative grounds).

may summarily affirm their convictions on that alternative basis without assessing the evidence on causation at all. We decline to forgo all harmless-error review of the *Burrage* error on this basis. The district court itself initially narrowed the focus of the harmless-error question to causation of Robin G.'s death, and never separately addressed causation of serious bodily injury to Robin G. as an alternative basis for finding harmless error (although the government eventually did make that argument in response to a motion for reconsideration filed by defendants). In any event, because we conclude that the evidence regarding cause of death is sufficient to show that the *Burrage* error was harmless under the *Brecht* standard, we prefer to affirm on a basis anchored in the record evidence rather than relying on the government's waiver theory.

### 3. Assessment of trial evidence for harmless error

Defendants contend that the failure to instruct the jury on but-for causation was not harmless. Although they invoke the *Neder* standard inappropriately applied by the district court, their evidentiary argument is readily assessed under the *Brecht* standard.

The district court held that the government presented an overwhelming case that the fentanyl Robin G. obtained through defendants was the but-for cause of her death. In particular, the district court noted that the government presented two expert witnesses—the medical examiner who performed the autopsy on Robin G. and the toxicologist who determined the exorbitant postmortem concentration of fentanyl in her blood—who opined *without qualification* that the fentanyl was *the cause* of

8

Robin G.'s death. On appeal, defendants point only to the testimony of their expert, Dr. Karch, who contested the medical examiner's and toxicologist's opinions by invoking the possibility that drug tolerance could have protected Robin G. from the effects of overdose and the possibility that postmortem redistribution of fentanyl could have affected the levels found by the toxicologist. Although he could offer no definitive opinion on an alternative cause of death, Dr. Karch "discount[ed] the Fentanyl entirely," R. Vol. 3 at 5530. The jury plainly rejected Dr. Karch's opinion in favor of those of the medical examiner and toxicologist—if the fentanyl were discounted entirely, a verdict of acquittal on the resulting-in-death charge would obviously have been required. Given the accepted opinions of the medical examiner and toxicologist and the rejected opinion of defendant's expert, we conclude that the district court's failure to instruct on but-for cause did not have a substantial and injurious effect on the jury's verdict.

## B. Double Jeopardy Challenge to LIO Convictions

Defendants contend their substituted convictions for the LIOs of drug and health care fraud violated the Double Jeopardy Clause, because the unqualified vacatur of their original convictions by the district court constituted an acquittal barring subsequent convictions for the same conduct. They do not cite a single authority for their overarching premise that once a court vacates a jury conviction for legal error, double jeopardy protections bar subsequent review and correction of the vacatur order. And, indeed, authority is squarely to the contrary. The Supreme Court has repeatedly held that "[w]hen a jury returns a verdict of guilty and a trial judge (or

9

an appellate court) sets aside that verdict and enters a judgment of acquittal, the Double Jeopardy Clause does not preclude a prosecution appeal to reinstate the jury verdict of guilty." *Smith v. Massachusetts*, 543 U.S. 462, 467 (2005). The Court explained the reasoning behind this principle in *United States v. Wilson*, 420 U.S. 332 (1975):

> [P]olicies underlying the Double Jeopardy Clause militate against permitting the Government to appeal after a verdict of acquittal. Granting the Government such broad appeal rights would allow the prosecutor to seek to persuade a second trier of fact of the defendant's guilt after having failed with the first; it would permit him to re-examine the weaknesses in his first presentation in order to strengthen the second; and it would disserve the defendant's legitimate interest in the finality of a verdict of acquittal. *These interests, however, do not apply in the case of a postverdict ruling of law by a trial judge. Correction of an error of law at that stage would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions.*

*Id.* at 352 (emphasis added and footnote omitted). Further, the Supreme Court has noted its approval of the specific practice of "direct[ing] the entry of judgment for a lesser included offense when a conviction for a greater offense is reversed on grounds that affect only the greater offense." *Rutledge v. United States*, 517 U.S. 292, 306 (1996); *see, e.g.*, *United States v. Smith*, 13 F.3d 380, 383 (10th Cir. 1993) (directing district court to impose conviction on LIO after vacating conviction on greater offense for insufficient evidence of element not required for LIO); *Ragland v. United States*, 784 F.3d 1213, 1214 (8th Cir. 2015) (vacating conviction for drug distribution resulting in death and remanding "with instructions for the district court to enter judgment on the lesser include offense of [drug] distribution").

Defendants note the LIO convictions here were imposed by the district court on collateral review, rather than at the direction of an appellate court on remand from a direct appeal, but that is "a distinction without a difference." *United States v. Silvers*, 90 F.3d 95, 99, 101 (4th Cir. 1996) (holding "district court's action [in a § 2255 proceeding] of reinstating [defendant's] previously-vacated [lesser included] conspiracy conviction, after vacating his CCE conviction on grounds that did not affect the conspiracy conviction, was appropriate and did not violate the Double Jeopardy Clause"). The material point is that correcting a vacatur order by instating LIO convictions supported by the jury verdict "would not grant the prosecutor a new trial or subject the defendant to the harassment traditionally associated with multiple prosecutions," *Wilson*, 420 U.S. at 352—and that is equally true whether the district court does so at the direction of an appellate court on remand from a direct appeal or on its own reconsideration of a vacatur order on collateral review.[5] We note *Silvers*

---

[5] The Sixth Circuit succinctly made much the same point in a related context (where the district court had granted a post-verdict motion for acquittal but changed its mind on reconsideration and reinstated the vacated conviction):

> There is no question that a postverdict acquittal is appealable by the government and that restoration of the guilty verdict is proper if the government prevails. Thus, there is no question that *we* could reverse and order that the conviction be reinstated. It follows *a fortiori* that it would not violate double jeopardy principles for the district court to make the same determination after a timely motion for reconsideration. It would be odd indeed to say that the trial court was precluded, on a motion for reconsideration, from doing what the appellate court clearly has the authority to do.

*United States v. Maddox*, 944 F.2d 1223, 1232-33 (6th Cir. 1991) (citation omitted).

11

was one of the cases specifically cited with approval by the Supreme Court in *Rutledge*. *See* 517 U.S. at 306.

In sum, we reject defendants' contention that "[a]s soon as the district court reversed and vacated the [resulting in death or serious bodily injury] convictions, Double Jeopardy clearly prohibited the government from taking 'another bite at the apple,'" Aplt. Opening Br. at 25. We note defendants also argue in this vein that, by failing initially to oppose vacatur of the convictions on the "resulting in" counts without substitution of the LIO convictions, the government waived the matter and the district court's grant of its motion for reconsideration on this basis was improper. But defendants did not seek and obtain a COA on this waiver argument—which, indeed, they never raised in opposition to the government's motion in the district court.

## C. Cumulative Error

Defendants advance a novel cumulative-error claim: "The cumulative effect of the district court's failure to provide the *Burrage* instruction to the jury on all seven counts unlawfully poisoned the jury's verdict on any one of those counts, including count 4 [involving Robin G.]." Aplt. Opening Br. at 17; *see also id.* at 17-18 (explaining that "what is at issue is not multiple *kinds* of errors [standard cumulative error], but repetition of the same error multiple times," i.e., whether "the prejudicial effect of not receiving [a *Burrage*] instruction across *all* ['resulting in'] counts impermissibly allowed the passions of the jury to influence their decision on any *one* count"). This claim was not asserted in defendants' § 2255 motions,

12

raised in the motion for COA, or included in the COA order. We therefore do not consider it.

The judgment of the district court is affirmed.

Entered for the Court


Monroe G. McKay
Circuit Judge