FILED
**United States Court of Appeals
Tenth Circuit**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**February 3, 2023**

**Christopher M. Wolpert
Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

SHAKEEL KAHN,

    Defendant - Appellant.

No. 19-8054

_____

**Appeal from the United States District Court
for the District of Wyoming
(D.C. No. 2:17-CR-00029-ABJ-1)**
_____

Submitted on the briefs:*

Beau B. Brindley and Blair T. Westover, Chicago, Illinois, for Appellant.

Nicholas Vassallo, Acting United States Attorney, Stephanie I. Sprecher, Assistant United States Attorney, and David A. Kubichek, Assistant United States Attorney, Office of the United States Attorney for the District of Wyoming, Casper, Wyoming, for Appellee.

_____

Before **MATHESON**, **BRISCOE**, and **CARSON**, Circuit Judges.

_____

**BRISCOE**, Circuit Judge.

_____

    * After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

_____

This case comes before the court on remand from the United States Supreme Court. Doctor Shakeel Kahn (Dr. Kahn) was convicted in the United States District Court for the District of Wyoming, in part, for dispensing controlled substances not "as authorized," in violation of the Controlled Substances Act (the CSA), 21 U.S.C. § 841(a). Included in his appeal to this court was his contention that the jury instructions issued by the district court improperly advised the jury regarding the mens rea requirement of § 841(a). We affirmed Dr. Kahn's convictions, rejecting not only his challenge to the instructions given, but also his challenges to multiple searches and the evidence seized. In upholding the instructions, we relied on our prior precedent, *United States v. Nelson*, 383 F.3d 1227 (10th Cir. 2004), and further reaffirmed its holding, which was guided by 21 C.F.R. § 1306.04(a).

Dr. Kahn appealed to the Supreme Court, raising only his instructional challenge. The Supreme Court held that § 841(a)'s "knowingly or intentionally" mens rea applies to the "except as authorized" clause of the statute, vacated our judgment, and remanded the case for further proceedings consistent with its opinion. *Ruan v. United States*, 142 S. Ct. 2370 (2022).[1] The parties have submitted supplemental briefing, and the matter is now ripe for decision.

_____

[1] The Supreme Court consolidated Dr. Kahn's appeal with that of Xiulu Ruan. *Ruan*, 142 S. Ct. at 2375 ("In each of these two consolidated cases, a doctor was convicted under § 841 for dispensing controlled substances not 'as authorized.'").

Exercising jurisdiction under 28 U.S.C. § 1291, we conclude that the jury instructions issued in Dr. Kahn's trial incorrectly stated the mens rea requirement of § 841(a) and, further, that such error was not harmless beyond a reasonable doubt. This prejudicial error infected all of Dr. Kahn's convictions. Therefore, we VACATE Dr. Kahn's convictions on all counts and REMAND for new trial.

## I.   FACTS

### A. Background

In 2008, Dr. Kahn, a medical doctor, opened a practice in Fort Mohave, Arizona. Later that year, his brother Nabeel, who is not a medical doctor, arrived in Arizona and began assisting Dr. Kahn in managing his practice. Thereafter, Dr. Kahn's practice shifted towards pain management. Beginning in late 2012, pharmacies in the Fort Mohave area began refusing to fill prescriptions issued by Dr. Kahn. In 2015, Dr. Kahn opened a second practice in Casper, Wyoming. During that time, Dr. Kahn continued to travel to Arizona to see patients; other patients travelled to Wyoming to see Dr. Kahn. Dr. Kahn's wife, Lyn, began acting as office manager for Dr. Kahn's Wyoming practice.

By 2016, the government was investigating Dr. Kahn's prescribing practices. After law enforcement executed a search warrant on Dr. Kahn's Arizona residence, the government indicted him on the following charges:

- Conspiracy to Dispense and Distribute Oxycodone, Alprazolam, Hydromorphone, and Carisoprodol Resulting in Death, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(2) (Count One);
- Possession of Firearms in Furtherance of a Federal Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1) (Count Two);

3

- Dispensing of Oxycodone, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) (Counts Four, Six, Seven, Sixteen, and Twenty);
- Possession with Intent to Distribute Oxycodone and Aid and Abet, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Counts Five, Nine, and Ten);
- Unlawful Use of a Communication Facility, in violation of 21 U.S.C. § 843(b) (Counts Eight, Twelve, Thirteen, Seventeen, and Eighteen);
- Dispensing of Oxycodone and Aid and Abet, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2 (Counts Eleven, Fourteen, and Nineteen);
- Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848(a), (b) and (c) (Count Twenty One);
- Engaging in Monetary Transactions Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957 (Counts Twenty Two and Twenty Three);

Aplt. App., Vol. I at 45.

## B. Trial and Jury Instructions

Lyn pleaded guilty to the conspiracy charge against her. Dr. Kahn and Nabeel, however, moved to suppress evidence seized in the searches of Dr. Kahn's homes and businesses. The district court denied the motion (except that it suppressed the seizure of any automobiles), and the case proceeded to trial.

After the close of evidence, the district court gave the following instructions to the jury pertaining to the 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) charges in Counts Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty:

> JURY INSTRUCTION NO. 36 . . . [The government] charge[s] various instances of knowingly and unlawfully dispensing and/or distributing Oxycodone while acting and intending to act outside the usual course of professional practice and without a legitimate medical purpose, in violation of 21 U.S.C. Section 841(a)(1) . . . . In pertinent part, Section 841(a) states it is "unlawful for any person knowingly

4

or intentionally to . . . distribute or dispense . . . a controlled substance," unless a specific exception authorizes it.

JURY INSTRUCTION NO. 37 . . . . To prove Defendant Shakeel Kahn is guilty of one or more of these Counts, the Government must prove beyond a reasonable doubt each of the following elements: . . . (3) Defendant Shakeel Kahn knowingly or intentionally distributed or dispensed the controlled substance outside the usual course of professional medical practice or without a legitimate medical purpose.

JURY INSTRUCTION NO. 39 . . . The good faith of Defendant Shakeel A. Kahn is a complete defense to the charges in Count One (conspiracy to commit a federal drug crime) as well as the charges in Counts Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty (knowingly and unlawfully dispensing and/or distributing Oxycodone outside the usual course of professional practice and without a legitimate medical purpose), because good faith on the part of Defendant Shakeel Kahn would be inconsistent with knowingly and intentionally distributing and/or dispensing controlled substances outside the usual course of professional practice and without a legitimate medical purpose, which is an essential part of the charges. "Good faith" connotes an attempt to act in accordance with what a reasonable physician should believe to be proper medical practice . . . . The good faith defense requires the jury to determine whether Defendant Shakeel Kahn acted in an honest effort to prescribe for patients' medical conditions in accordance with generally recognized and accepted standards of practice.

Aplt. App., Vol. I at 236–37, 239.[2]

Dr. Kahn and Nabeel objected to the district court's jury instructions regarding their potential criminal liability under § 841(a)(1), their respective "good faith" defenses,

---

[2] We discuss the jury instructions regarding the remaining counts in Section II.D, *infra*.

and the intent requirement under the CSA. The district court overruled these objections. The jury returned a verdict of guilty on all counts, except that it acquitted Nabeel of causing the death of one of Dr. Kahn's patients.

### C. Appeals

Dr. Kahn and Nabeel appealed their convictions on multiple grounds, including the jury instructions, and this court affirmed the convictions. *See United States v. Kahn*, 989 F.3d 806 (10th Cir.), *cert. granted sub nom. Kahn v. United States*, and *vacated and remanded sub nom. Ruan*, 142 S. Ct. 2370. Dr. Kahn then appealed to the Supreme Court, challenging the jury instructions as they relate to his CSA convictions. Specifically, Dr. Kahn argued that the jury instructions did not properly instruct the jury regarding the mens rea requirements of the CSA for distributing controlled substances not "as authorized." *See* 21 U.S.C. § 841(a).

The Supreme Court determined that this court applied an incorrect scienter standard, and it vacated our earlier judgment. *Ruan*, 142 S. Ct. at 2382. The Supreme Court instructed us to address on remand whether the jury instructions that were given at Dr. Kahn's trial complied with the mens rea standard set forth in *Ruan*, as well as whether any instructional error was harmless. *Id.*

## II.   DISCUSSION

In order to determine whether the instructions provided to the jury during Dr. Kahn's trial complied with the mens rea standard set forth in *Ruan*, as well as whether any instructional error was harmless beyond a reasonable doubt, we first discuss the CSA

6

and the *Ruan* decision. Then, applying the scienter requirement discussed in *Ruan* to the jury instructions at issue, we conclude that (1) the district court did not properly instruct the jury as to the mens rea that the government was required to prove beyond a reasonable doubt to convict Dr. Kahn, and (2) such error was not harmless.

### A. The CSA and *Ruan*

Dr. Kahn was convicted by a jury for violating the following provision of the CSA:

> (a) Unlawful acts
>
> > *Except as authorized by this subchapter*, it shall be unlawful for any person knowingly or intentionally—
> >
> > (1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance; or
> >
> > (2) to create, distribute, or dispense, or possess with intent to distribute or dispense, a counterfeit substance.

21 U.S.C. § 841(a) (emphasis added). A federal regulation provides that, to be "authorized," "[a] prescription for a controlled substance . . . must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04.

In *Ruan*, the issue before the Supreme Court "concern[ed] the state of mind that the Government must prove to convict [a defendant] of violating [§ 841(a)]." *Ruan*, 142 S. Ct. at 2375. In resolving this issue, the Supreme Court "h[e]ld that [§ 841(a)]'s 'knowingly or intentionally' *mens rea* applies to authorization." *Id.* Thus, "once a

7

defendant meets the burden of producing evidence that his or her conduct was 'authorized,' the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* at 2376.

The Supreme Court rejected the government's argument that, "once a defendant meets his or her burden of production, the Government can convict by proving beyond a reasonable doubt that [the defendant] did not even make an objectively reasonable attempt to ascertain and act within the bounds of professional medicine." *Id.* at 2381 (internal quotation marks and citation omitted). The Court emphasized that § 841(a) does not contain a "good faith," "objective," "reasonable," or "honest effort" standard, and courts cannot read such a standard into the statute. *Id.* The government must prove that a "defendant knew or intended that his or her conduct was unauthorized"—it cannot rely on comparison to the good faith efforts or mental state of "a hypothetical 'reasonable' doctor." *Id.* at 2381–82.

Further, the Supreme Court ruled that, to establish mens rea, it is insufficient for the government to prove that a defendant acted without "a legitimate medical purpose" or outside the "usual course" of generally recognized "professional practice." *Ruan*, 142 S. Ct. at 2382; *see* 21 C.F.R. § 1306.04. Proof that a defendant did so is "circumstantial evidence" that may be used to prove knowledge of a lack of authorization. *Ruan*, 142 S. Ct. at 2382. Certainly, "the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury . . . will find that the Government has carried its burden of proving knowledge."

8

*Id.* (internal quotation marks and citation omitted). But, in order to convict a defendant, the government must prove that the defendant "knew or intended that his or her conduct was unauthorized." *Id.*; *see also United States v. Fabode*, No. 21-1491, 2022 WL 16825408, at *6 (6th Cir. Nov. 8, 2022) ("The Supreme Court reiterated, however, that circumstantial evidence and objective criteria such as 'legitimate medical purpose' and 'usual course' of 'professional practice' are often probative indicia of a defendant's subjective knowledge and intent." (internal quotation marks and citation omitted)).

To illustrate its holding, the Supreme Court discussed *Liparota v. United States*, 471 U.S. 419 (1985), which concerned the mens rea required to convict a person for the unauthorized use of food stamps:

> Analogous precedent reinforces our conclusion. In *Liparota*, we interpreted a statute penalizing anyone who "'knowingly uses [food stamps] in any manner not authorized by'" statute. We held that "knowingly" modified both the "use" of food stamps element and the element that the use be "not authorized." We applied "knowingly" to the authorization language even though Congress had not "explicitly and unambiguously" indicated that it should so apply. But if knowingly did not modify the fact of nonauthorization, we explained, the statute "would . . . criminalize a broad range of apparently innocent conduct."

*Ruan*, 142 S. Ct. at 2378 (internal citations omitted). Just as in *Liparota*, to convict under § 841(a) of the CSA, "the Government may prove by reference to facts and circumstances surrounding the case that petitioner knew that his conduct was

unauthorized or illegal." *Liparota*, 471 U.S. at 434.[3] However, the government's showing of objective criteria, without proving that a defendant actually intended or knew that he or she was acting in an unauthorized way, is not enough to convict. *Id.*

**B.  The District Court Incorrectly Instructed the Jury as to Mens Rea**

We conclude that the jury instructions issued in Dr. Kahn's case are inconsistent with the mens rea standard articulated in *Ruan*, as they do not require the government to prove beyond a reasonable doubt that Dr. Kahn knowingly or intentionally acted in an unauthorized manner.

*1.  Standard*

"We review de novo whether jury instructions, as a whole, correctly state the law and provide the jury with an understanding of the issues." *United States v. Little*, 829 F.3d 1177, 1181 (10th Cir. 2016) (citation omitted). "We will disturb a judgment only if we have 'substantial doubt that the jury was fairly guided.'" *Id.* (quoting *United States v. Smith*, 13 F.3d 1421, 1424 (10th Cir. 1994)).

---

[3] While the defendant in *Liparota* knew that he was purchasing food stamps below the market rate, 471 U.S. at 421–22, such knowledge was not enough to establish guilt, *id.* at 429–30. The Supreme Court held that knowingly engaging in conduct that is, in fact, unauthorized is not sufficient, even if one is aware of all the factors that render it unauthorized. Instead, the government was required to prove that the defendant actually knew that his conduct was unauthorized under the law. Importantly, however, the Supreme Court concluded that "the Government need not show that [a defendant] had knowledge of specific regulations governing food stamp acquisition or possession." *Id.* at 434.

2. *Analysis*

    a.  <u>Legitimate Medical Purpose or Usual Course of Professional Practice</u>

The jury was repeatedly instructed that it could convict Dr. Kahn if it concluded that he acted outside the usual course of professional medical practice or without a legitimate medical purpose. *See, e.g.*, Aplt. App., Vol. I at 220–21 (instructions for Count One), 224–25 (instructions for Count One), 232 (instructions for Count One), 236–37 (instructions for Counts Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty), 239 (instructions for Counts One, Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty), 264 (instructions for Count Twenty One). In review of the instructions given, we previously concluded that "§ 841(a)(1) and § 1306.04(a) require the government to prove that a practitioner-defendant *either*: (1) subjectively knew a prescription was issued not for a legitimate medical purpose; *or* (2) issued a prescription that was objectively not in the usual course of professional practice." *Kahn*, 989 F.3d at 825 (emphasis added) (citing *United States v. Nelson*, 383 F.3d 1227, 1233 (10th Cir. 2004)). In partitioning § 1306.04(a), we treated the inquiry under the first "prong" as wholly subjective, considering "why a defendant-practitioner subjectively issued that prescription, regardless of whether other practitioners would have done the same," and we treated the inquiry under the second prong as wholly objective, considering "whether a defendant-practitioner objectively acted within that scope, regardless of whether he believed he was doing so." *Id.* For two reasons, this analysis is incorrect under *Ruan*.

11

First, *Ruan* expressly disallows conviction under § 841(a)(1) for behavior that is only objectively unauthorized. The government must prove that a defendant "knowingly or intentionally acted in an unauthorized manner." *Ruan*, 142 S. Ct. at 2376.

Second, *Ruan* treats the two criteria in § 1306.04(a) not as distinct bases to support a conviction, but as "reference to objective criteria" that may serve as circumstantial evidence of a defendant's subjective intent to act in an unauthorized manner. *Id.* at 2382; *see also id.* at 2377 ("[T]he regulatory language defining an authorized prescription is . . . ambiguous, written in generalit[ies], susceptible to more precise definition and open to varying constructions." (internal quotation marks and citations omitted)). Under § 841(a)(1), the government always has the burden of "proving that a defendant knew or intended that his or her conduct was unauthorized." *Id.* at 2382.[4] Accordingly, the jury instructions were erroneous because they allowed the jury to convict Dr. Kahn after concluding either that Dr. Kahn subjectively knew a prescription was issued not for a legitimate medical purpose, or that he issued a prescription that was objectively not in the usual course of professional practice. Both approaches run counter to *Ruan*.

_____

[4] This court previously stated its concern that "[i]f a subjective standard applied to both prongs, a pharmacist who willingly ignored evidence that a prescription was invalid could escape liability, so long as he (even unreasonably) believed the prescription was filled for a legitimate medical purpose, and he acted within his own (unreasonable) scope of professional practice." *Kahn*, 989 F.3d at 825. The Supreme Court, however, did not share this concern, and *Ruan* holds that an unreasonable pharmacist may not be convicted if he did not intend to act in an unauthorized way. *Ruan*, 142 S. Ct. at 2382. Of course, evidence of objective unreasonableness may support a jury's ultimate finding that a defendant subjectively intended to act without authorization. *Id.*

b. Good Faith Instruction

The district court provided the jury with the following "good faith" instruction:

> JURY INSTRUCTION NO. 39 . . . The good faith of
> Defendant Shakeel A. Kahn is a complete defense to the
> charges in Count One (conspiracy to commit a federal drug
> crime) as well as the charges in Counts Four, Six, Seven,
> Eleven, Fourteen, Sixteen, Nineteen, and Twenty (knowingly
> and unlawfully dispensing and/or distributing Oxycodone
> outside the usual course of professional practice and without a
> legitimate medical purpose), because good faith on the part of
> Defendant Shakeel Kahn would be inconsistent with
> knowingly and intentionally distributing and/or dispensing
> controlled substances outside the usual course of professional
> practice and without a legitimate medical purpose, which is an
> essential part of the charges. "Good faith" connotes an attempt
> to act in accordance with what a reasonable physician should
> believe to be proper medical practice . . . . The good faith
> defense requires the jury to determine whether Defendant
> Shakeel Kahn acted in an honest effort to prescribe for patients'
> medical conditions in accordance with generally recognized
> and accepted standards of practice.

Aplt. App., Vol. I at 239. In light of *Ruan*, this good faith exception is also problematic.

The good faith exception's reliance on terms like "reasonable physician" and "should believe" impose an objective standard and are exactly the type of language that the Supreme Court stated is impermissible. *Ruan*, 142 S. Ct. at 2381 ("The Government's ['objectively reasonable good-faith effort'] standard would turn a defendant's criminal liability on the mental state of a hypothetical 'reasonable' doctor, not on the mental state of the defendant himself or herself."). Section 841(a) does not "use[] words such as 'good faith,' 'objectively,' 'reasonable,' or 'honest effort,'" and a district court cannot insert them into the jury instructions. *Id.* Further, the instruction's use of the word "attempt" is

13

equally precarious. The question to be posed to a jury is whether a physician was subjectively intending to act in a way that he believed was unauthorized—not whether he was attempting to act in a way that a "reasonable physician should believe" was authorized or unauthorized. *See* Aplt. App., Vol. I at 239. Again, "[t]he Government . . . [must] prove knowledge of a lack of authorization." *Ruan*, 142 S. Ct. at 2382.

### 3. *Conclusion*

To convict under the CSA, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner." *Id.* Here, the instructions provided to the jury improperly interjected a good faith exception and effectively lowered the government's burden to showing only that Dr. Kahn's behavior was objectively unauthorized—not that Dr. Kahn intended to act without authorization. The government argued in *Ruan* that the Supreme Court "should read [§ 841] as implicitly containing an 'objectively reasonable good-faith effort' or 'objective honest-effort standard,'" but the Supreme Court was "not convinced." *Id.* at 2381. So our analysis, likewise, must end there. The instructions given in Dr. Kahn's trial do not correctly state the mens rea requirement of § 841(a)(1), as articulated in *Ruan*.

### C. The Invalid Jury Instructions Did Not Result in Harmless Error

Next, we must determine whether the errors in the jury instructions are harmless beyond a reasonable doubt. Because the issue of Dr. Kahn's intent was contested during trial, and because the government has not established beyond a reasonable doubt that the

14

jury determined that Dr. Kahn knowingly or intentionally acted not "as authorized," we conclude that the instructions provided to the jury did not result in harmless error.

### 1. Standard

The purpose of jury instructions is to give jurors the correct principles of law applicable to the facts so that they can reach a correct conclusion as to each element of an offense according to the law and the evidence. However, "[e]ven when the district court fails to include an element of the crime in the instruction (including a mens rea element), we . . . apply the harmless error rule, asking whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Little*, 829 F.3d at 1183 (quoting *United States v. Sorensen*, 801 F.3d 1217, 1229 (10th Cir. 2015)). The harmless error rule also applies where an instruction was given incorrectly. *See, e.g.*, *United States v. Benvie*, 18 F.4th 665, 670 (10th Cir. 2021). When applying the harmless error rule, "we must determine 'whether the guilty verdict actually rendered in *this* trial was surely unattributable to the [alleged] error,'" *United States v. Mullikin*, 758 F.3d 1209, 1211 (10th Cir. 2014) (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993))— not "whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered," *Sullivan*, 508 U.S. at 279. "That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." *Id.*

"It is well-established that the burden of proving harmless error is on the government." *United States v. Holly*, 488 F.3d 1298, 1307 (10th Cir. 2007). Again, the

15

general test for harmless error requires that the government prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Luke-Sanchez*, 483 F.3d 703, 705 (10th Cir. 2007) (citing *Neder*, 527 U.S. at 15) (applying this test to "[a] jury instruction that improperly describe[d] an element of the charged crime"); *see also Neder*, 527 U.S. at 11 (extending harmless error analysis to instructions that omit an element; "[o]mitting an element can easily be analogized to improperly instructing the jury on the element, an error that is subject to harmless-error analysis."). In the context of jury instructions that omit—rather than misstate—an element, we have sometimes invoked a passage of *Neder* that imposes additional requirements. Under that test, the government must prove "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 11. We have previously declined to "parse out the proper formulation of the harmless-error standard for direct review under *Neder*," *United States v. Schneider*, 665 F. App'x 668, 672 (10th Cir. 2016),[5] and we may continue to avoid doing so here. Under either iteration

---

[5] "Defendants contend the applicable standard for determining harmless error when, as here, the jury was not instructed on an element of the offense is whether the 'reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error.' *Neder*, 527 U.S. at 17. In reviewing such instructional error for harmlessness on direct appeal from a conviction, we have sometimes invoked this standard verbatim. We have on other occasions invoked another passage from *Neder* that does not refer to whether the omitted element was uncontested or supported by overwhelming evidence, but simply asks more generally 'whether it

16

of the test for harmless error, the government has not shown beyond a reasonable doubt that the instructional error was harmless.

## 2. Analysis

During his testimony at trial, Dr. Kahn did not contest the fact that he wrote the relevant prescriptions, nor did he contest that the testifying patients were abusing or selling their medications. The central issue put to the jury in Dr. Kahn's trial was his intent in issuing the charged prescriptions. We start with *Neder*'s test for reviewing instructions that omit an element, moving then to the general harmless error test. We conclude that, under both tests, the government has not met its burden in showing that the erroneous jury instructions played no part in the jury's verdict.

a. The Mens Rea Element Was Not Uncontested and Supported by Overwhelming Evidence, Such That the Jury Verdict Would Have Been the Same Absent the Error

Under the more specific test articulated in *Neder* for reviewing instructions which omitted elements, the government must prove "beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." 527 U.S. at 11. Here, the government is correct that the Supreme Court has acknowledged that "the scope of a doctor's prescribing authority" remains tethered "to objective criteria such as 'legitimate

---

appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Schneider*, 665 F. App'x at 672 (internal citations omitted).

medical purpose' and 'usual course' of 'professional practice.'" *Ruan*, 142 S. Ct. at 2382.

A physician's serial disregard of accepted medical norms constitutes relevant evidence of

his mental state, and "the more unreasonable a defendant's asserted beliefs or

misunderstandings are, especially as measured against objective criteria, the more likely

the jury . . . will find that the Government has carried its burden of proving knowledge."

*Id.* (internal quotation marks and citations omitted). But, while the government may point

to voluminous trial testimony and numerous exhibits meant to prove (through

circumstantial evidence) that Dr. Kahn knowingly or intentionally acted in an

unauthorized manner, we cannot reach this conclusion.

This is not a case in which the element of the crime that was impacted[6] by the

invalid jury instruction was "uncontested and supported by overwhelming evidence," and

where "the defendant 'did not contest the element . . . at trial,' and did not 'suggest that

he would introduce any evidence bearing upon the issue . . . if so allowed.'" *United States

v. Ellis*, 868 F.3d 1155, 1172 (10th Cir. 2017) (quoting *Neder*, 527 U.S. at 15, 17). Where

an element of an offense is contested at trial, as it was here, the Constitution requires that

the issue be put before a jury—not an appellate court. *See Neder*, 527 U.S. at 18–19

(discussing the Sixth Amendment's jury guarantee; "[i]n a case . . . where a defendant did

not, and apparently could not, bring forth facts contesting the omitted element, answering

---

[6] We need not decide whether the mens rea element was omitted or rather misstated in the jury instructions. Regardless of the label one could apply, the instructional requirements of *Ruan* are not satisfied.

the question whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee"). In this case, Dr. Kahn's intent was in dispute throughout his trial and was the centerpiece of his defense. A jury, properly instructed, must address whether the government carried its burden to establish Dr. Kahn's intent beyond a reasonable doubt.

For this court to now essentially retry the case on appeal and opine on what verdict the jury would have reached if it had been properly instructed asks too much of an appellate court. This is particularly true here, where we would be determining Dr. Kahn's subjective intent on a cold record. This court will not wade into the evidence to now apply the correct instructions—that is the jury's prerogative.

      b.   <u>The Guilty Verdict Actually Rendered in Dr. Kahn's Trial Was Not Surely Unattributable to the Alleged Instructional Error</u>

The more general harmless error question is whether, given what the jury necessarily did find based on the instructions it was provided, "the guilty verdict actually rendered in *this* trial was surely unattributable to the [alleged] error." *Mullikin*, 758 F.3d at 1211 (quoting *Sullivan*, 508 U.S. at 279). Here, we cannot say with certainty that the erroneous instructions, which effectively reduced the government's burden of proof, did not contribute to the verdict.

As we stated in our prior opinion, the jury instructions given in Dr. Kahn's trial meant that the jury "could only convict Dr. Kahn if it found, beyond a reasonable doubt, that Dr. Kahn failed to even attempt or make some honest effort to apply the appropriate

19

standard of care." *Kahn*, 989 F.3d at 826. The instructions provided in Dr. Kahn's trial did not require the jury to decide whether Dr. Kahn knowingly or intentionally acted without authorization.

While proof that Dr. Kahn failed to try to conform his prescribing practices to the standards of his profession may "go far to show, circumstantially at least, that [Dr. Kahn] actually knew he was acting outside the standards of his profession," Aple. Supp. Br. at 6, that evidence does not fully satisfy the requirement that the government prove that Dr. Kahn "knowingly or intentionally acted in an unauthorized manner," *Ruan*, 142 S. Ct. at 2376. It is not enough that the jury found that Dr. Kahn failed to attempt or make some honest effort to apply the appropriate standard of care, nor is it enough that the jury accepted that Dr. Kahn subjectively knew a prescription was issued not for a legitimate medical purpose, and/or issued a prescription that was objectively not in the usual course of professional practice.

To allow conviction where the government proved only that Dr. Kahn failed to attempt or make some honest effort to apply the appropriate standard of care does not require any finding by the jury that Dr. Kahn intended to act not "as authorized." The government must show that the jury necessarily made a finding that Dr. Kahn knowingly or intentionally acted not "as authorized." As it stands, the jury in Dr. Kahn's case was provided incorrect instructions, and that error went directly to the heart of the trial: Dr. Kahn's intent. The instructions allowed conviction if the jury concluded "that Dr. Kahn failed to even attempt or make some honest effort to apply the appropriate

20

standard of care." *Kahn*, 989 F.3d at 826. Based on the jury instructions, as they were written and presented to the jury, the jury was not required to find that Dr. Kahn intended to or knowingly did act not "as authorized." The jury did not make the required mens rea finding, and "to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee." *Sullivan*, 508 U.S. at 279.

### 3. Conclusion

We cannot conclude beyond a reasonable doubt that the mens rea element, "was uncontested *and* supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." *Neder*, 527 U.S. at 17 (emphasis added). Nor can we conclude that the jury's verdict was unattributable to the erroneous instruction. The government *may* be able to present circumstantial evidence that Dr. Kahn knowingly or intentionally acted in an unauthorized manner (indeed, the government has attempted to do so on remand to this court), but this court should not assume the responsibility of making a finding on a contested issue of fact. *Connecticut v. Johnson*, 460 U.S. 73, 85–86 (1983) ("If the jury may have failed to consider evidence of intent, a reviewing court cannot hold that the error did not contribute to the verdict. The fact that the reviewing court may view the evidence of intent as overwhelming is then simply irrelevant."); *see also United States v. Twitty*, 641 F. App'x 801, 805 (10th Cir. 2016) ("Appellate judges are poorly equipped to evaluate states of mind based on a cold record. The issue of . . . subjective intent is one best left to the determination of a properly instructed jury."

21

(internal quotation marks and citations omitted)). We cannot act as a "second jury."

*Neder*, 527 U.S. at 19 (citation omitted). We conclude that the erroneous jury instructions

issued in Dr. Kahn's trial did not result in harmless error.

### D.  Dr. Kahn's Remaining Convictions

Finally, we discuss which of the counts of conviction, specifically, were affected

by erroneous instructions. We determine that *each* of Dr. Kahn's convictions was

impacted by erroneous instructions in a way that prejudiced him, and, therefore, we

remand with directions to vacate his convictions on all counts.

The jury instructions pertaining 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), as charged

in Counts Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty all contain

the following language:

> To Prove [Dr. Kahn] is guilty of [these counts], the Government must prove beyond a reasonable doubt [that] . . . [Dr. Kahn] knowingly or intentionally distributed or dispensed the controlled substance outside the usual course of professional medical practice or without a legitimate medical purpose.

Aplt. App., Vol. I at 237. The instructions as to these counts and, in addition, Count One,

which charges conspiracy to dispense and distribute controlled substances resulting in

death, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C), and (b)(2), also include the

good faith exception. *Id.* at 239–40. Accordingly, as discussed above, the instructions as

to Counts One, Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty are

erroneous and did not result in harmless error.

22

As for the remaining counts, the instructions predicate conviction on the jury's finding of guilt in the erroneously-instructed Counts One, Four, Six, Seven, Eleven, Fourteen, Sixteen, Nineteen, and Twenty. For example, the instructions for Counts Five, Nine, and Ten, which charge Dr. Kahn with aiding and abetting his codefendant in furtherance of § 841(a)(1) crimes, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) and 18 U.S.C. § 2, state, "[t]his means the government must prove that [Dr. Kahn] shared [his codefendant's] knowledge of the underlying [§ 841(a)(1)] criminal act and intended to help him." *Id.* at 258. The instructions for Counts Eight, Twelve, Thirteen, Seventeen, and Eighteen charge Dr. Kahn with use of a communication facility in furtherance of the crimes charged in Counts One, Seven, and Eleven, in violation of 21 U.S.C. § 843(b). *Id.* at 253–55. Count Two charges Dr. Kahn with possession of a firearm, again, "in furtherance of a federal drug trafficking crime," in violation of 18 U.S.C. § 924(c)(1), and the instructions indicate that conviction rested on whether the jury concluded that Dr. Kahn possessed a firearm in furtherance of Count One. *Id.* at 242–43. The instructions for Count Twenty One charge Dr. Kahn with "continuing criminal enterprise," in violation of 21 U.S.C. § 848(a), (b), and (c), which the instructions define as the continuation of the illegal drug activities detailed in Counts One through Twenty. *Id.* at 262. Finally, the instructions for Counts Twenty Two and Twenty Three charge Dr. Kahn with engaging in monetary transactions derived from specified unlawful activity (money laundering), in violation of 18 U.S.C. § 1957—the "unlawful activity" at issue is, again, tied back to the

23

conduct charged in Counts One, Four through Seven, Nine through Eleven, Fourteen, Sixteen, Nineteen, and Twenty. *Id.* at 271–73.

For each § 841(a)(1) charge on which Dr. Kahn was convicted, the instructions erroneously articulated the mens rea requirement in light of *Ruan*. As regards the remaining charges, the instructions pertaining to those charges are likewise predicated, at least in part, on one or more of the erroneous § 841(a)(1) instructions. Accordingly, we conclude that Dr. Kahn's convictions as to each count must be vacated.

## III.     CONCLUSION

The jury instructions issued in Dr. Kahn's trial incorrectly instructed the jury regarding the mens rea requirement of § 841(a), and this same error infected the instructions given on all counts. The government has not shown beyond a reasonable doubt that the erroneous jury instructions resulted in harmless error. Accordingly, we VACATE Dr. Kahn's convictions and REMAND for new trial.